JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: 2:24-cv-03046-MCS-AJR |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| TONNAGE INDUSTRIAL LLC, a California limited liability company; TONNAGE INDUSTRIAL PROPERTIES LLC, a California limited liability company, | |
| Defendants. | |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendants TONNAGE INDUSTRIAL LLC AND TONNAGE INDUSTRIAL PROPERTIES LLC ("Defendants") own and operate two industrial facilities located at 1539 Cota Avenue, Long Beach, CA 90813 with Waste Discharger Identification ("WDID") Number 4 19I029804 (the "Cota Facility"); and 2130 W. Cowles Street, Long Beach, CA 90813, with WDID Number 4 19I028368 (the "Cowles Facility") (together the "Facilities");

**WHEREAS**, the Cota Facility's industrial activities consist of metal cutting and welding and is categorized under Standard Industrial Classification ("SIC") Codes 3441 and 3449, covering fabricated structural metal and miscellaneous structural metal work, respectively;

**WHEREAS,** the Cowles Facility's industrial activities consist of manufacturing a line of products for industrial and other metalworking as an industrial metal fabrication facility and sourcing service center that provides steel, aluminum, and galvanized metal and other industrial products and tools. The Cowles Facility is categorized under SIC Codes 3316 (Cold-Rolled Steel Sheet, Strip, and Bars), 3317 (Steel Pipe and Tubes); and 5051 (Metal Service Centers and Offices);

**WHEREAS**, storm water discharges associated with industrial activity at the Cota and Cowles Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants' operations at the Facilities result in discharges of

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on November 28, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendants, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on April 4, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-03046-MCS-AJR ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including the Dominguez Channel Estuary, the Los Angeles and Long Beach Harbors, and the Pacific Ocean ("Receiving Waters");

**WHEREAS**, Defendants have acquired a separate property located at 1523 Cota Avenue, Long Beach, CA, and plan to move its industrial activities to this new facility where such activities will be conducted under cover and not exposed to storm water by the end of 2025;

**WHEREAS,** the Agreement shall only apply to the operations at the Facilities and not apply to any new property or other facility operated by Defendants;

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place is located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I.     OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II.     AGENCY REVIEW AND DEFINITIONS

### A.     AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Discharge Point" means each discharge location designated in the then-current SWPPP for each of the Facilities.

g.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.    "Forecasted Rain Event" means a rain event with a greater than 50% probability of occurrence as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90813, Westside South, Long Beach, CA, USA""[2].

j.    "MIP" means a Monitoring Implementation Plan.

k.    "PPT" means Pollution Prevention Team.

l.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.    "SWPPP" means a Storm Water Pollution Prevention Plan.

q.    "Term" means the period between the Effective Date and the "Termination Date."

r.    "Termination Date" means the latest of:

    i.    June 30 following three (3) years from the Effective Date;

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.7901&lon=-118.2268

   ii. Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

   iii. Seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

   iv. Notwithstanding the foregoing, should Defendants satisfy the requirements of a Notice of Termination pursuant to Section II.C of the General Permit and receive approval from the Regional Board, and all accrued monetary obligations in this Consent Decree have been met, the Termination Date of this Consent Decree shall be ten (10) days after Defendants provide written notification to LA Waterkeeper of the Regional Board's approval.

  s. "Wet Season" means the period beginning October 1st of any given calendar year and ending May 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

  **A.** **STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

  12. <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

  13. <u>Current and Additional Best Management Practices.</u> At all times, Defendants shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those  necessary to comply with: (1) BAT/BCT-level pollutant reductions;

and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facilities "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.    Rain Gauge/Sensor. Defendants shall install and maintain an electronic rain gauge or sensor at the Cota Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.    Structural and Non-Structural BMPs for the Facilities. Within forty-five (45) days of the Effective Date, Defendants shall develop and implement the following BMPs at each of the Facilities, unless otherwise noted below:

a.    Employ and secure new biochar-based,[3] or similar activated carbon-based, filtration socks ("Socks") around each of the Facilities' storm water drain dop inlets configured in concentric rings around the inlets. Where discharge occurs via sheet flow at the Facilities, place at least two (2) rows of Socks in the flow pathway, and configure the Socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations.

b.    At the Cota Facility, place multiple rows of Socks within the narrow alleyways between the Indoor Workshop Buildings to aid

---

[3] This requires replacement of all existing straw wattles currently in use at the Facilities.

CONSENT DECREE

in solids settling and retention of heavy metals, and configure the Socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendant shall, thereafter, employ and secure the Socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

c.    During the Wet Season, replace the Socks when degraded or ineffective, including when there are rips, tears or other visual damage, and/or if sampling data demonstrated the Socks are not sufficiently reducing pollutant concentrations;

d.    Establish secondary containment for the dust collection system at the Cota Facility;

e.    Implement a sweeping program using a magnetic sweeper and a "shop-vac" vacuum with a Hepa filter adequate to access narrow workspaces with the capacity to collect and retain PM-10 (10 μm, micrometers or microns) particles on all paved areas at the Facilities at least once per week and within twenty-four (24) hours prior to a Forecasted Rain Event;

f.    Remove or cover all scrap and waste materials, and abandoned, unused, or inutile equipment or vehicles from the property;

g.    Place all raw, intermediate, or finished materials under a covered structure adequate to minimize exposure to rainfall, consistent with the definition of "Storm-Resistant Shelters" from the Permit, to minimize the potential for storm water to encounter the material below the structures or for contents to become windborne;

h.    Cover all scrap, refuse, and recycling bins with lids, tarps, or other coverings designed to be sufficient to minimize exposure to

rainfall and prevent the mobilization of pollutants, or move them under Storm-Resistant Shelters;

i.    Maintain spill clean-up supplies at all fluid or chemical storage areas, chemical loading areas, and maintenance areas; promptly contain and clean all discharge, spills or leaks occurring outdoors or with the potential to migrate outdoors using absorbents or other appropriate equipment or materials;

j.    Institute an equipment and vehicle maintenance program that ensures:

   i.    no maintenance activities occur outside during wet weather, unless such maintenance is required for safe operation of the Facility, e.g., the forklift breaks down in a location that prevents ingress/egress;

   ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

   iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

k.    Do not leave drip pans or open waste containers unattended and close such containers or transfer all wastes to proper containers as soon as practical;

l.    Regularly inspect industrial work areas, and hazardous material and waste storage areas for proper implementation and maintenance of control measures and containment integrity;

m.    Store all hazardous materials and waste under cover and within secondary containment;

11
CONSENT DECREE

n.   Patch, pave, or otherwise resurface or cover areas of degraded pavement or asphalt at the Facilities[4];

o.   Institute a formal pre-rain protocol throughout the Wet Season implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any Socks or other filters deployed at the Facilities, and to ensure coverage or removal of materials most likely to increase storm water-borne pollutants; and

p.   Within seven (7) days of the above BMPs being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs (if applicable), that such BMP has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITIES.**

16.   Defendants shall develop a monitoring program consistent with the General Permit. During the Term, Defendants shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including, at minimum, the first Qualifying Storm Event during the first half of the Reporting Year and the first Qualifying Storm Event during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period as required by the General Permit § XI.B.5. If Defendants would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking representative photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit

---

[4] Tonnage will provide temporary cover surrounded by additional Socks to areas of degraded pavement or asphalt at the Cowles Facility until the lease expires in August 2025. If the lease at the Cowles Facility is renewed, Tonnage (or the landlord) shall provide more permanent patching and paving of degraded areas.

such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) business days of a written request for such records by LA Waterkeeper.

17.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendants conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, or a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall promptly notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument for pH calibrated and in accordance with the manufacturer's instructions.

19.    <u>Detection Limit</u>. Defendants shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>. Defendants shall provide complete laboratory results of all samples collected at the Facilities to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

## C.    REDUCTION OF POLLUTANTS IN DISCHARGES

21.    <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels below those in Table 1.

### TABLE 1[5]

| Parameter | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous) 100 mg/L (annual) | NAL |
| Iron | 1 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous) 15 mg/L (annual) | NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L (annual) | NAL |
| Aluminum | 0.75 mg/L (annual) | NAL |
| Nickel | 1.02 mg/L (annual) | NAL |
| Cadmium | 0.0053 mg/L (annual) | NAL |
| Zinc | 0.26 mg/L (annual) | NAL |
| Lead | 0.262 mg/L (annual) | NAL |
| Copper | 0.0332 mg/L (annual) | NAL |
| pH | 6.5-8.5 s.u. (instantaneous) | Basin Plan |

22.    <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: an exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceeds the applicable annual value in Table 1;[6] or one (1) or more analytical results from

---

[5] Unless the source of a limit in Table 1 is specifically noted as a "negotiated term", the numeric limit listed in Table 1 is for reference only, and the Table 1 limit for such parameter shall be the then-effective limit provided by the applicable source, e.g., if the source for zinc is listed as its NAL and the NAL for zinc is either increased to 0.3 mg/L or decreased to 0.20 mg/L, such new NAL, and not 0.26 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the benchmark for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[6] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.0332 mg/L standard for copper on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 0.0332 mg/L. standard for copper on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1

1  samples taken for any single parameter within a Reporting Year exceeds the

2  applicable instantaneous value in Table 1.

3      23.    Action Plan for Table 1 Exceedances. As of the Effective Date, and for

4  the remainder of the Term, if Defendants have an unauthorized non-storm water

5  discharge in violation of Paragraph 12, or storm water samples demonstrate an

6  Exceedance as defined above, Defendants shall prepare and submit to LA

7  Waterkeeper a plan for reducing and/or eliminating the relevant discharge of

8  pollutants for the Facilities and/or achieving compliance with the non-storm water

9  discharge prohibition ("Action Plan"). The complete Action Plan shall be submitted

10  to LA Waterkeeper within thirty (30) days of the unauthorized non-storm water

11  discharge or the receipt of the laboratory report demonstrating the Exceedance, as

12  applicable.

13          a.    Action Plan Requirements. Each complete Action Plan submitted

14                shall include at a minimum: (1) the identification of the

15                contaminant(s) discharged in excess of the numeric limit(s; (2) an

16                assessment of the source of each contaminant exceedance; (3) the

17                identification of additional BMPs that shall be implemented to

18                achieve compliance with the numeric limit(s), as well as the

19                design plans and calculations of these additional BMPs; and (4)

20                time schedules for implementation of the proposed BMPs. The

21                time schedule(s) for implementation shall ensure that all BMPs

22                are implemented as soon as practicable, but in no event later than

23                ninety (90) days following the submission of the Action Plan,

24                unless a later implementation date is mutually agreed upon by the

25                Settling Parties. Within seven (7) days of each of the BMPs set

26                forth in the Action Plan being implemented, Defendants shall

27  _____

28  exceeding the 0.0332 mg/L standard for copper on December 28, 2024, and a sample from Sample Point 2 exceeding the 0.0332 mg/L standard for copper on March 15, 2025.

confirm to LA Waterkeeper in writing, with representative photographs (if applicable), that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facilities' storm water discharges:

    i.    Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    ii.   Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.  Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv.   Evaluation of Existing BMPs. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan,

Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28 below.

e.    <u>Action Plan Payments</u>. Defendants shall pay Two Thousand Five Hundred Dollars ($2,500.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street Suite 250, Los Angeles, CA 90012. No more than two Action Plan Payments shall be required in any reporting year under this Consent Decree. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

24.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facilities'

operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

25.   <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly non-storm water visual observations of the Facilities. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facilities. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facilities to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facilities. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facilities.

26.   <u>Visual Observations Records</u>. Defendants shall maintain observation records, including representative photographs, to document compliance with Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

27.     Employee Training Program. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facilities designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a.     Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facilities;

b.     Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.     Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facilities' SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.     Sampling Training. Defendants shall designate an adequate number of employees necessary to collect storm water samples as

required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.   <u>Visual Observation Training</u>. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   <u>Non-Storm Water Discharge Training</u>. Defendants shall train all Designated Employees at the Facilities on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   <u>Employees</u>. All Designated Employees at the Facilities shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.   <u>Records</u>. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

28.   <u>SWPPP Revisions</u>.

a.   <u>Initial SWPPP Revisions</u>. Defendants shall amend the Facilities' SWPPPs to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.      A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facilities' storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.     A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facilities as required by section X.G of the General Permit;

iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.     A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.      A MIP as required by sections XI and X.I of the General Permit;

vi.     A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.    A Training Program as described above in Paragraph 27.

b.      <u>Additional SWPPP Revisions</u>.

i.      Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan

and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.    Within thirty (30) days after any material changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP for the affected Facility to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    <u>Review of SWPPPs</u>.  For any SWPPP updates pursuant to Paragraph 28, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

### E.    COMPLIANCE MONITORING AND REPORTING

29.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least forty-eight (48) hours' notice prior to a dry weather Site Inspection and twenty-four hours prior to a wet weather inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facilities in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 56. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facilities' designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to take photographs or video recordings of outdoor operations during any Site Inspection.

30.    Document Provision. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendants shall copy LA Waterkeeper, by email to the individual(s) designated below at Paragraph 56, on all compliance

documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within three (3) business days of receipt by Defendants, send to LA Waterkeeper, by email to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facilities received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

31.    <u>Compliance Monitoring</u>. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying Thousand Dollars ($2,500.00). Payment shall be made within thirty (30) days of the Entry Date. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

F.    **ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles/Long Beach Harbor, Defendants shall make a payment totaling Twenty-Two Thousand Five Hundred Dollars ($22,500.00) to the Rose Foundation for Communities and the Environment made within one hundred and fifty (150)  days of the Entry Date, payable to the Rose

Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Forty Thousand Dollars ($40,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within made in three installments, with 1) the first installment for Twenty Thousand ($20,000) being made within forty-five (45) days of the Entry Date, 2) the second installment for Ten Thousand ($10,000) being made within seventy-five (75) days of the Entry Date, and 3) the third installment for Ten Thousand ($10,000) being made within one hundred and twenty (120) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 8 Rio Vista Ave., Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide Defendants notice of said failure, and Defendants shall have twenty (20) days to remedy the failure. If Defendants do not fail to provide the required item, or provide justification for failing to provide said time, Defendants shall pay a stipulated payment of Five Hundred Dollars ($500) per month. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendants agree to make the stipulated

payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

35.    <u>Interest on Late Payments</u>. Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

36.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40. <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint or could have been raised in the 60-Day Notice and/or Complaint up to and including the Termination Date of this Consent Decree.

41. <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any

other judicial or administrative body on any matter relating to Defendants' compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement

between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51.    <u>Diligence</u>. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

54.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their

1  successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any

2  assignment.

3      56.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default

4  in the performance of any of their respective obligations under this Consent Decree

5  when performance becomes impossible due to a Force Majeure event. A Force

6  Majeure event is any circumstance beyond a Settling Party's control, including any

7  act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or

8  natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or

9  terrorism; restraint by court order or public authority or agency; or action or non-

10 action by, or inability to obtain the necessary authorizations or approvals from any

11 governmental agency. A Force Majeure event shall not include normal inclement

12 weather, economic hardship, inability to pay, or employee negligence. Any party

13 seeking to rely upon this Paragraph to excuse or postpone performance shall have the

14 burden of establishing that it could not reasonably have been expected to avoid the

15 Force Majeure event and which by exercise of due diligence has been unable to

16 overcome the failure of performance. The Parties shall exercise due diligence to

17 resolve and remove any Force Majeure event.

18     57.   <u>Correspondence</u>. All notices required herein or any other correspondence

19 pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

20 transmission to the e-mail address listed below, or if electronic mail is not feasible,

21 then by certified U.S. mail with return receipt, or by hand delivery to the following

22 addresses:

23 | <u>If to Plaintiff</u>: | <u>If to Defendants</u>: |
|---|---|
24 | Los Angeles Waterkeeper | Tonnage Industrial LLC and Tonnage |
| Erina Kwon | Industrial Properties LLC |
25 | Benjamin Harris | Greg Phillips |
| Madeleine Siegel | 2130 W. Cowles St. |
26 | 360 E. 2nd St., Suite 250 | Long Beach, CA 90813 |
27 | Los Angeles, CA 90012 | Email: greg@tonnageindustrial.com |
| Email: erina@lawaterkeeper.org | Phone: 310-489-4021 (c) |
28 | Email: ben@lawaterkeeper.org | Phone: 800-893-9681 (o) |

1  Email: madeleine@lawaterkeeper.org
2  Phone: (310) 394-6162

3

4

5  With copies to:                With copies to:
6  Aqua Terra Law Group LLP       Perry S. Hughes
   Anthony M. Barnes              Cox, Castle & Nicholson
7  8 Rio Vista Ave.               2029 Century Park East, Suite 2100
   Oakland CA, 94611              Los Angeles, CA  90067
8  Email: amb@atalawgroup.com     Email: phughes@coxcastle.com
9  Phone: 917-371-8293            Phone: 310-740-0297

10  Notifications of communications shall be deemed submitted three (3) days after the

11  date that they are postmarked and sent by first-class mail, or immediately after

12  acknowledgement of receipt via email by the receiving party. Any change of address

13  or addresses shall be communicated in the manner described above for giving notices.

14      58.    If for any reason the Federal Agencies should object to entry of this

15  Consent Decree or to any portion of this Consent Decree or the Court should decline

16  to approve this Consent Decree in the form presented, the Parties shall use their best

17  efforts to work together to modify the Consent Decree within thirty (30) days so that

18  it is acceptable to the Federal Agencies or the Court. If the Parties are unable to

19  modify this Consent Decree in a mutually acceptable manner that is also acceptable

20  to the Court, this Consent Decree shall immediately be null and void as well as

21  inadmissible as a settlement communication under Federal Rule of Evidence 408 and

22  California Evidence Code section 1152.

23      / / /

24      / / /

25

26

27

28

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: March 10, 2025

_____
Mark C. Scarsi
United States District Judge

CONSENT DECREE